IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| MISSISSIPPI PRODUCTIONS, INC., an Oregon corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>THE CINCINNATI INSURANCE COMPANY, an Ohio corporation,<br><br>    Defendant. | Case No.<br><br>COMPLAINT<br>(Breach of Contract; Breach of Covenant of Duty of Good Faith and Fair Dealing; Declaratory Judgment)<br><br>**CLAIM NOT SUBJECT TO MANDATORY ARBITRATION**<br><br>Amount Claimed:  $400,000<br>Statutory Fee Authority:  ORS 21.160(1)(c)<br>Filing Fee:  $594 |

Plaintiff Mississippi Productions, Inc. alleges as follows:

**PARTIES**

1.

Mississippi Productions, Inc., ("Mississippi") is an Oregon corporation that owns and operates Mississippi Studios and Polaris Hall, both located in Portland, Oregon, with its principal place of business in Portland, Oregon.

2.

The Cincinnati Insurance Company ("Cincinnati") is an Ohio corporation with its principal place of business in Fairfield, Ohio.  Cincinnati conducts business including but not limited to selling insurance policies in Multnomah County, Oregon.

///

///

Page 1 -   Complaint

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

EXHIBIT A, Page 1 of 18

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction because the policy of insurance at issue insures property in this county and was issued in this county.

4.

Venue is proper in this Court because the insurance policy at issue insures property in and was issued in this county.

## FACTUAL BACKGROUND

### Mississippi and the Cincinnati Policy

5.

Mississippi Studios is a musical recording studio, performance venue, and associated bar and restaurant (known as "Bar Bar") located at 3939 N. Mississippi Avenue in Portland, Oregon. Polaris Hall is a performance venue located at 635 N. Killingsworth Court in Portland, Oregon.

6.

From its principal place of business in Portland, Oregon, Mississippi purchased a commercial property insurance policy from Defendant Cincinnati, numbered EPP 031 83 98, and with a policy period of April 9, 2018 through April 9, 2021 (the "Policy") that covered Mississippi Studios and Polaris Hall, among other properties and businesses.

7.

The Policy provides coverage for "direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss."

8.

"Loss" is defined in the Policy as "accidental physical loss or accidental physical damage."

///

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

9.

The Policy states that "Covered Cause of Loss means direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part."

10.

Because the only causes of loss that are not covered by the Policy are those that are specifically excluded by the Policy, the Policy provides what is commonly known as "all-risk" coverage.

11.

The Policy contains two "forms" that provide business income and extra expense coverage: 1) the "Building and Personal Property Coverage (Including Special Causes of Loss)" Form, numbered FM 101 05 16; and 2) the "Business Income (and Extra Expense)" Form, numbered FA 213 05 16. Each of these forms provide that Cincinnati "will pay for the actual loss of 'Business Income' . . . due to the necessary 'suspension' of [the insured's] 'operations' during the 'period of restoration.'"

12.

The Policy also provides coverage for "Extra Expense," which is defined in the Policy as "necessary expenses" sustained by the insured "during the 'period of restoration' that [the insured] would not have sustained if there had been no direct 'loss' to property caused by or resulting from a Covered Cause of Loss."

13.

"Suspension" is defined in the Policy as the "slowdown or cessation of [the insured's] business activities; and [t]hat a part or all of the 'premises' is rendered untenantable."

14.

"Period of restoration" is defined in the Policy as the period that "[b]egins at the time of direct 'loss' and [e]nds on the earlier of" the date when the insured's property "should be

///

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

repaired, rebuilt, or replaced with reasonable speed and similar quality" or when the insured resumes operations at a new permanent location.

15.

The Policy contains an "Additional Coverage" for "Civil Authority," which provides coverage on the following essential terms: "When a Covered Cause of Loss causes damage to property other than Covered Property at a 'premises,' [Cincinnati] will pay for the actual loss of Business Income and necessary Extra Expense" that the insured sustains "caused by action of civil authority that prohibits access to the 'premises.'"

16.

The Policy also provides other coverages and terms that may be relevant to the loss sustained by Mississippi as described herein, including but not limited to coverage for business income loss resulting from prevention of "Ingress" and "Egress" and coverage for losses incurred to protect covered property from further damage.

17.

The Policy expressly provides that "two or more coverages in this policy [may] apply to the same 'loss.'"

18.

Mississippi intended to rely on the insurance coverage provided by the Policy to keep the business alive in the event of a natural disaster, or other event not excluded by the Policy causing business income and other loss.

**The Pandemic**

19.

In or around December of 2019, a novel coronavirus began to spread in China. China provided the genetic sequence for what has become known as the 2019 Novel Coronavirus (also known as SARS-CoV-2) on or about January 12, 2020. The World Health Organization ("WHO") later named the disease that may result from infection by SARS-CoV-2, "COVID-19."

Page 4 -    Complaint

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

EXHIBIT A, Page 4 of 18

20.

In January 2020, health officials reported that a Washington State resident tested positive for SARS-CoV-2 infection, and that he was the first known U.S. resident infected by the virus. Officials announced that the first death in the United States from COVID-19 (they believed at the time) occurred in King County, Washington on February 28, 2020.

21.

The WHO recognized on January 25, 2020, that the 2019 Novel Coronavirus is a "global threat to human health . . . ." On January 30, 2020, the WHO Director declared the 2019 Novel Coronavirus outbreak "a Public Health Emergency of International Concern."

22.

On March 11, 2020, the Director of the WHO determined that the rapidly spreading SARS-CoV-2 virus and COVID-19 disease constituted a worldwide pandemic. WHO saw "alarming levels of spread and severity" of SARS-Cov-2 and COVID-19. WHO representatives stated: "Pandemic is not a word to use lightly or carelessly . . . We have never before seen a pandemic sparked by a coronavirus. This is the first pandemic caused by a coronavirus. And we have never before seen a pandemic that can be controlled, at the same time."

23.

The United States Center for Disease Control ("CDC") has stated, among other things, that a "pandemic is a global outbreak of disease. Pandemics happen when a new virus emerges to infect people and can spread between people sustainably. Because there is little to no pre-existing immunity against the new virus, it spreads worldwide."

24.

The WHO has explained that SARS-CoV-2 primarily spreads through respiratory droplets expelled when an infected person talks, sneezes, and coughs, and by "fomites," objects

///

Page 5 -   Complaint

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

EXHIBIT A, Page 5 of 18

and surfaces contaminated by the respiratory droplets. Emerging research suggests also that SARS-CoV-2 spreads by becoming aerosolized, or through airborne transmission.

25.

Emerging research on the virus and reports indicate that SARS-CoV-2 physically infects and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous. Other research indicates that the virus may linger on surfaces for up to four weeks in lower temperatures.

26.

SARS-CoV-2 reportedly has an incubation period of 2–12 days, during which time it can be spread by an infected person even before symptoms develop in the infected person. During periods of time relevant to this complaint testing for the SARS-CoV-2 virus, either of persons or surfaces, was not widely available.

27.

On March 24, 2020, the World Health Organization indicated that the United States had the potential to become the center of the SARS-CoV-2 pandemic.

28.

As of April 11, 2020, all 50 states as well as the U.S. Virgin Islands, the Northern Mariana Islands, Washington, D.C., Guam and Puerto Rico had received a federal disaster declaration as a result of the pandemic. As of April 11, 2020, American Samoa was the only U.S. territory that was not under a major disaster declaration.

29.

No later than March 13, 2020, at least one person physically present in downtown Portland, Oregon, where Mississippi is located, was reported to have tested positive for infection by SARS-CoV-2.

///

///

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

## Governmental Orders

30.

On March 8, 2020, Oregon Governor Kate Brown issued Executive Order 20-03, declaring a state of emergency as a result of the presence and transmission of SARS-CoV-2, pursuant to ORS 401.165 *et seq.*

31.

On March 12, 2020, Governor Brown issued Executive Order 20-05 ("Order 20-05"), prohibiting gatherings of 250 people or more, and stating, "COVID-19 spreads person-to-person through coughing and sneezing, close personal contact, such as touching or shaking hands, or touching an object or surface with the virus on it, and then touching your mouth, nose, or eyes. The symptoms are fever, cough and difficulty breathing." Order 20-05 was immediately effective.

32.

On March 17, 2020, Governor Brown issued Executive Order 20-07 ("Order 20-07"), which among other things, banned gatherings of more than 25 people and prohibited restaurants from offering dine-in or "on-premises" service and consumption of food or beverages. Order 20-07 was immediately effective.

33.

Also on March 17, 2020, Governor Brown issued Executive Order 20-08, which stated in part:

> COVID-19 may cause respiratory disease leading to serious illness or death. The World Health Organization considers COVID-19 to be a global pandemic. *COVID-19 spreads person-to-person through coughing, sneezing, close personal contact, including touching a surface with the virus on it and then touching your mouth, nose, or eyes.*
>
> State and local public health officials advise that the virus is circulating in the community and expect the number of cases to increase. The United States Centers for Disease Control and

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Prevention (CDC) reports that COVID-19 is most contagious when the individual is most symptomatic, but may also spread before symptoms appear. CDC recommends measures to limit spread of the disease in the community, including limitations on events and gatherings.

(Emphasis added.)

34.

On March 23, 2020, Governor Brown issued Executive Order 20-12 ("Order 20-12"), which "prohibit[ed] the operation of" certain businesses, including "social and private clubs" and "theaters." Order 20-12 was immediately effective.

35.

On April 7, 2020, Governor Brown issued Executive Order 20-14, which extended Order 20-07.

36.

Subsequently, Governor Brown implemented a phased reopening process that impacted all businesses, including Mississippi, which made reopening dependent on State approval of county-specific reopening plans. In June, 2020, the State approved a plan that included allowing restaurants in Multnomah County to offer limited on-premises consumption of food and beverages beginning on June 19, 2020.

**Mississippi's Response to the Pandemic**

37.

On or about March 12, 2020, Mississippi closed its premises to customers and suspended its operations due to the pandemic, the presumptive, likely and actual presence of the SARS-CoV-2 virus, and Order 20-07 and other applicable governmental directives.

/ / /

/ / /

/ / /

Page 8 -    Complaint

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

EXHIBIT A, Page 8 of 18

38.

Since that time, Mississippi has attempted to mitigate its losses by selling or attempting to sell certain products or services, constituting a significant slowdown if not complete cessation of its operations.

39.

Mississippi was forced to lay off or furlough employees, cancel performances, refund ticket costs to customers, cancel orders from suppliers, incur expenses to mitigate loss, and take other actions with a significant impact on its business, its business partners and its community, as a result of the suspension of its operations and Defendant's failure to pay losses covered under the Policy.

40.

Mississippi's suspension of its operations is ongoing.

### **Mississippi's Losses**

41.

As a result of the pandemic, including but not limited to loss of customers and loss of employees, and or in the alternative as a result of the presumptive, likely and actual presence of the virus in the community, including employees and customers, and on and about the premises, property at Mississippi's premises was rendered physically unfit or unsafe for ordinary or intended use, rendered substantially unusable, and/or lost physical utility, and therefore it was necessary for Mississippi to suspend operations.

42.

Mississippi's necessary suspension of its operations for the reasons described above beginning on or about March 12, 2020, and continuing to date, was caused by direct accidental physical loss to property at its covered premises.

///

///

Page 9 - Complaint

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

EXHIBIT A, Page 9 of 18

43.

Mississippi has incurred actual loss of business income due to the suspension of its operations as described above, in an amount to be proven at trial but not less than $395,000.

44.

Mississippi has also incurred necessary expenses following the suspension of its operations described above that it would not have incurred if there had been no accidental direct physical loss to its property as described above. Mississippi incurred these extra expenses in order to reduce its business income loss including minimizing the suspension of its business, and to prevent further damage to the property, in an amount to be proven at trial but not less than $5,000.

45.

And or in the alternative, the governmental orders described above and other similar orders constitute multiple instances of "action of civil authority" within the meaning of the Policy on the basis that a "Covered Cause of Loss"—the pandemic and/or virus —caused "damage" to property other than the insured's property; that the orders "prohibited access" to the insured's premises; that the orders "prohibited access" to the "area immediately surrounding" the "damaged property" "as a result of the damage" by limiting gatherings and other public and private activities; and that the orders were issued "in response to dangerous physical conditions" resulting from the "damage:" the pandemic and/or presence of the virus.

46.

And or in the alternative the pandemic, and or in the alternative the presence of the virus in the community, employees and customers other than on the premises, prevented existing ingress and egress to the insured's property due to direct loss to property contiguous to the insured's property.

///

///

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

47.

On or about March 20, 2020, Mississippi informed Cincinnati of its claim for Policy benefits as a result of the actions and loss described above.

48.

On or about May 27, 2020, Cincinnati denied Mississippi's claim.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract)**

49.

Mississippi realleges and incorporates each preceding paragraph as if fully set forth herein.

50.

Mississippi paid substantial premiums to Cincinnati in consideration for Cincinnati's promise to pay Mississippi's claims for business income loss and extra expense covered by the Policy. The Policy constitutes a contract between the parties.

51.

Mississippi complied with all conditions precedent to coverage under the Policy, except for any obligations that were waived or excused.

52.

Cincinnati breached its express and implied duties under the Policy by, among other things, denying coverage under the terms of the Policy.

53.

By breaching the terms of the Policy, Cincinnati has caused and continues to cause Mississippi damages in an amount to be proven at trial, but not less than $400,000.

/ / /

/ / /

/ / /

Page 11 -   Complaint

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

EXHIBIT A, Page 11 of 18

54.

As a result of Cincinnati's breach, Mississippi has been required to retain counsel and incur attorney fees and other costs, for which Cincinnati is liable pursuant to, among other laws, ORS 742.061.

## SECOND CLAIM FOR RELIEF

### (Breach of the Covenant of Good Faith and Fair Dealing)

55.

Mississippi realleges and incorporates each preceding paragraph as if fully set forth herein.

56.

Every contract, including the Policy, contains an obligation of good faith and fair dealing, performance, and enforcement. Cincinnati had discretion in its performance of certain obligations under the Policy.

57.

Cincinnati's refusal to pay Policy benefits to Mississippi was unreasonable and without proper cause and therefore breached the covenant of good faith and fair dealing inherent in the Policy.

58.

Cincinnati breached its implied duties of good faith and fair dealing in the performance of its obligations under the Policy in at least the following ways: 1) failing to adequately investigate Mississippi's claim, including failing to adopt reasonable interpretations of undefined and disputed terms in the Policy; 2) failing to provide a proper explanation for the basis relied on for its denial of Mississippi's claim in relation to the facts or applicable law; 3) by misrepresenting facts and the terms of the Policy in an effort to improperly deny or limit its coverage obligations; 4) by compelling Mississippi to initiate this litigation in order to recover

///

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Policy benefits; and 5) on information and belief, by failing to adopt and implement reasonable standards for the prompt and correct investigation of Mississippi's claim.

59.

As a direct result of Cincinnati's breach of the covenant of good faith and fair dealing, Mississippi has been damaged in an amount to be proven at trial.

60.

As a direct result of Cincinnati's conduct Mississippi has been required to retain the services of an attorney and to incur attorney fees and other costs resulting from the need to contest Cincinnati's denial.

61.

As a direct result of the conduct of Cincinnati as alleged above, Mississippi has been damaged and injured, and is therefore entitled to recover:

a) reasonable attorney fees incurred by Mississippi in obtaining Policy benefits in an amount to be proved at trial under applicable law, including ORS 742.061;

b) costs and expenses associated with the need to contest Cincinnati's denial that are not recoverable under ORS 742.061; and

c) an award of consequential damages resulting from Cincinnati's conduct, in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**(Declaratory Judgment)**

62.

Mississippi realleges and incorporates each preceding paragraphs as if fully set forth herein.

63.

A justiciable controversy exists between Mississippi and Cincinnati regarding coverage under the Policy for the business income loss and extra expense suffered by

Page 13 -   Complaint

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

EXHIBIT A, Page 13 of 18

Mississippi. The Court can resolve the controversy through entry of a Judgment declaring the rights and liabilities of Mississippi and Cincinnati relative to coverage under the Policy for Mississippi's business income loss and extra expense. Mississippi requests appropriate declaratory relief to establish its rights.

64.

For the reasons set forth above, Mississippi is entitled to a declaration that Cincinnati has breached the Policy and that Cincinnati is obligated to cover Mississippi's business income losses up to the Policy's limits.

**DEMAND FOR JURY TRIAL**

65.

Plaintiff demands a trial by jury on all claims for which a right to jury trial applies.

**PRAYER FOR RELIEF**

WHEREFORE, Mississippi prays for judgment as follows:

1. On its First Claim for Relief, for judgment in favor of Mississippi and against Cincinnati in an amount to be proven at trial, but not less than $400,000;

2. On its Second Claim for Relief, for judgment in favor of Mississippi and against Cincinnati in an amount to be proven at trial;

3. On its Third Claim for Relief, for a judgment declaring that Cincinnati has breached the Policy and that Cincinnati is obligated to cover Mississippi's business income losses up to the Policy limits;

4. For its reasonable attorney fees and costs incurred pursuant to applicable law including ORS 742.061;

5. For pre-judgement interest at the highest applicable statutory rate; and

/ / /

/ / /

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

| | |
|---|---|
| 1 | 6. For such other and further relief as the Court deems just, equitable, and |
| 2 | proper. |
| 3 | DATED this 2nd day of September, 2020. |
| 4 | MILLER NASH GRAHAM & DUNN LLP |

*s/ Seth H. Row*
Seth H. Row, OSB No. 021845
seth.row@millernash.com
Katelyn J. Fulton, OSB No. 183404
katelyn.fulton@millernash.com
Shanelle Honda, OSB No. 131139
shanelle.honda@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorneys for Plaintiff Mississippi Productions, Inc.

Page 15 - Complaint

264482-0001/4817-8239-5337.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

EXHIBIT A, Page 15 of 18

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

MISSISSIPPI PRODUCTIONS, INC.,

        Plaintiff,

vs.

THE CINCINNATI INSURANCE COMPANY,

        Defendant.

Case No. **20CV30517**

CERTIFICATE OF SERVICE

STATE OF OREGON
County of Multnomah      ss.

I, Edmund Knowles, hereby certify that I am a competent person 18 years of age or older, a resident of the State of Oregon and that I am not a party to nor an attorney for any party in the within named action; that I made service of a true copy of:

*Summons and Complaint*

CORPORATE SERVICE - Pursuant to ORCP 7D(3):

Upon **THE CINCINNATI INSURANCE COMPANY**, by personal service upon Rylynn Poole , the clerk on duty in the office of the registered agent, National Registered Agents, Inc., 780 Commercial St. SE Ste 100, Salem, OR 97301 on September 03, 2020 at 1:20 PM.

I declare under the penalty of perjury that the above statement is true and correct.
Dated this ___8th___ day of ___Sept___, 20__20__.

X_____*Edmund Knowles*_____
Edmund Knowles
Nationwide Process Service, Inc.
1201 S.W. 12th Avenue, Suite 300
Portland, OR 97205
503-241-0636

\*352091\*

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| MISSISSIPPI PRODUCTIONS, INC., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE CINCINNATI INSURANCE COMPANY, an Ohio corporation,<br><br>Defendant. | Case No. 20CV30517<br><br>SUMMONS |

TO: The Cincinnati Insurance Company
c/o National Registered Agents, Inc.
780 Commercial Street, SE, Suite 100
Salem, Oregon 97301

Pursuant to ORCP 7 C(2), YOU ARE REQUIRED TO APPEAR AND DEFEND the complaint filed against you by plaintiff Mississippi Productions, Inc. within <u>30 days from the date of service of this summons on you</u>. Plaintiff's claims are stated in the written complaint, a copy of which is served upon you with this summons. If you fail to appear within the required time, plaintiff will apply to the court for the relief demanded in the complaint.

**NOTICE TO DEFENDANT:**

**READ THESE PAPERS CAREFULLY!**

You must "appear" in this case or the other side will win automatically. To "appear," you must file with the court a legal document called a "motion" or an "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with

Page 1 - Summons

264482-0001/4824-9022-8680.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

EXHIBIT A, Page 17 of 18

| | |
|---|---|
| 1 | the required filing fee.  It must be in proper form and have proof of service on the plaintiff's |
| 2 | attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff. |
| 3 |       If you have questions, you should see an attorney immediately.  If you need help |
| 4 | in finding an attorney, you may contact the Oregon State Bar's Lawyer Referral Service online at |
| 5 | www.oregonstatebar.org or by calling (503) 684-3763 (in the Portland metropolitan area) or toll- |
| 6 | free elsewhere in Oregon at (800) 452-7636 |

DATED this 3rd day of September, 2020.

MILLER NASH GRAHAM & DUNN LLP

*/s/ Seth H. Row*

Seth H. Row, OSB No. 021845
seth.row@millernash.com
Katelyn J. Fulton, OSB No. 183404
katelyn.fulton@millernash.com
Shanelle Honda, OSB No. 131139
shanelle.honda@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorneys for Plaintiff Mississippi Productions, Inc.

Page 2 -   Summons

264482-0001/4824-9022-8680.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

EXHIBIT A, Page 18 of 18