UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MISSISSIPPI PRODUCTIONS, INC.,
an Oregon corporation,

      Plaintiff,

v.

THE CINCINNATI INSURANCE
COMPANY, an Ohio corporation,

      Defendant.

Case No. 3:20-cv-01711-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Mississippi Productions, Inc. ("Insured"), filed this lawsuit against The Cincinnati Insurance Company ("Cincinnati") seeking coverage under a commercial property insurance policy ("Policy") for business losses sustained due to the required closure of its musical recording studio, performance venue, and associated bar and restaurant during the COVID-19 pandemic. Cincinnati filed a motion (ECF No. 25) to dismiss in which it primarily argued that the coronavirus

Page 1 – OPINION AND ORDER

and resulting governmental orders, which forced the Insured to close or dramatically limit its services, did not result in physical loss or damage covered by the Policy. The City of Portland ("City") filed a motion (ECF No. 48) to appear as *amicus curiae* in support of Insured's opposition to the motion to dismiss.

The court finds the supplemental facts offered by the City in its *amicus* brief are not helpful to the court in a case of public interest, are not a proper subject in an *amicus* brief, and do not draw the court's attention to relevant legal issues missing from the parties' briefs. Accordingly, the City's motion is denied.

*Legal Standard*

"*Amicus curiae*," also known as "friend of the court," is generally defined as a person or entity not named as a party to litigation who volunteers to assist the court by providing input or making suggestions on a currently pending matter. *See Florida by and through Mccollum v. United States*, Case No. 3:10-cv-91-RV/EMT, 2010 WL 11570635, at *1 (N. D. Fla. June 14, 2010); https://www.collinsdictionary.com/dictionary/english/amicus-curiae (last visited November 12, 2021). The "classic role" of *amicus curiae* is "assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration." *Miller-Wohl Co. v. Comm'r of Labor & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982). "The touchstone is whether the *amicus* is 'helpful' and there is no rule that '*amici* must be totally disinterested.'" *California v. United States Dep't of Labor*, No. 2:13-CV-02069-KJM-DAD, 2014 WL 12691095, at *1 (Jan. 14, 2014) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)). *Amici* should take a legal position and present legal arguments in support of such position but

generally may not offer a partisan, or any, view of the facts. *Funbus Sys., Inc. v. Cal. Pub. Utils. Comm'n.*, 801 F.2d 1120, 1125 (9th Cir. 1986). However, "in the absence of exceptional circumstances, . . . [the court does] not address issues raised only in an *amicus* brief.'" *California*, 2014 WL 12691095, at *1 (quoting *Artichoke Jo's Cal. Grand Casino v. Norton*, 353 F.3d 712, 719 n.10 (9th Cir. 2003)). While there is no rule addressing the filing of an *amicus* brief in a district court, "the Ninth Circuit has held that 'a district court has broad discretion in the appointment of *amicus* curiae.'" *California*, 2014 WL 12691095, at *1 (quoting *Hoptowit*, 682 F.2d at 1260).

*Discussion*

In the motion, the City contends the matter before the court is one of public interest because the "potential impacts of this case extend beyond the parties – plaintiffs are not the only Oregon business operating on a budgetary brink and relying on the all-risk policies sold to them." (City of Portland's Mot. to Appear as *Amicus Curiae*, ECF No. 48 ("Mot."), at 2.) The City seeks to provide its "perspective as to why the equities weigh heavily in favor of ordering the Cincinnati insurers to make good on their all-risk insurance agreements," by providing the court background on the spread of COVID-19 in the City, delineating the effects on the City budget, residents, and businesses of a finding in favor of Cincinnati, and explaining the problematic public-health implications of Cincinnati's position. (Mot. at 4.) Specifically, the City asserts the court should allow it to "supplement and support" the Insured's position that the Policy provides coverage for the losses caused by the pandemic because:

> First, government-ordered preventative measures, which have prohibited full-capacity business activity since March of 2020, were essential to prevent countless deaths and long-term health effects caused by COVID-19. Second, a judicial endorsement of coverage denial would likely pile on substantial uncertainty to the

Page 3 – OPINION AND ORDER

> City's general-fund budget, which funds, among other things, public safety, parks and recreation, culture, and community development. Lastly, the Cincinnati insurers' argument that there is no "loss" because government orders permit severely limited use of property dangerously incentivizes businesses—many of which are already making difficult choices between safety and economic survival—to make choices that increase the risk of spreading COVID-19.

(Mot. Ex. 1 at 3.)

Cincinnati opposes the City's motion, arguing the City's supplemental arguments are not relevant to the only issue before the court, the proper construction of the terms of the Policy. Cincinnati asserts the interpretation of an insurance contract is a question of law for the court and extrinsic evidence is not admissible to determine the meaning of contract terms.

I. General Public Interest

The court agrees the interpretation of the Policy in favor of Cincinnati may result in the closure of the venue at issue and other businesses with similar insurance policies, encourage other restaurants to make choices that might increase the spread of COVID-19, and detrimentally affect the City's citizens and budget, and that one or more of these possible results could affect, to some degree, the general public. The court also acknowledges that health risks created by COVID-19 and, at least arguably, the virus's effect on normal business operations also are matters of public interest. These considerations, however, do not convert an insurance coverage dispute into a case that makes appropriate the intervention of *amicus curiae* briefing. The essence of this case is whether, under the specific terms of an insurance policy between the parties, coverage exists. That narrow issue, which is the legal issue to be decided here, is not one of public interest in this case. Consequently, the general public interest in this case does not weigh in support of the filing of an *amicus* brief in this case.

II. Supplementing the Efforts of Counsel

The City's *amicus* brief offers information on the COVID-19 pandemic, government orders issued in response to the pandemic, the effect of the pandemic and such orders on the City's revenue and budget, and the possible backlash on the City, City restaurants, and City residents should the court grant Cincinnati's motion to dismiss. In support of this background and related arguments, the City cites various websites, news articles, and executive orders. This information purports to supplement the allegations in the operative complaint filed as an exhibit to the Notice of Removal filed on October 2, 2020 ("Complaint"), as well as to add the factual background the parties have offered in their respective briefing on the motion to dismiss. However, the supplemental facts offered in the City's *amicus* brief are not properly before the court and will not be considered, for two reasons.

First, when considering a motion to dismiss, the court is limited to the allegations of the complaint and should not consider extrinsic evidence. Generally, a court may not consider material beyond the complaint when deciding a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion. FED. R. CIV. P. 12(d) (explaining that if court considers other materials, the motion is converted into a motion for summary judgment under Rule 56); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (*per curiam*)). A court, however, may consider materials beyond the pleadings in certain circumstances without converting the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment under two exceptions: incorporation by reference and judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250

F.3d 668, 688 (9th Cir. 2001) (discussing that a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment).

The incorporation by reference doctrine "is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 999. In contrast, judicial notice under Federal Rule of Evidence 201 ("Rule 201") permits a court to take judicial notice of undisputed facts in matters of public record. *Khoja*, 899 F.3d at 999. A court may take judicial notice of an adjudicative fact that is "'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting FED. R. EVID. 201 (b)(1)-(2)). A court is limited to taking judicial notice only of undisputed matters in public records. *Lee*, 250 F.3d at 689-90. "When a court takes judicial notice of a public record, 'it may do so not for the truth of the facts recited therein, but for the existence of the [record], which is not subject to reasonable dispute over its authenticity.'" *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012, 1021 (D. Or. 2015) (quoting *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1157 (D. Nev. 2009) (quoting *Lee*, 250 F.3d at 690) (alteration in original)).

The Complaint expressly refers to, and therefore incorporates by reference, various declarations and orders issued by the World Health Organization and Oregon Governor Kate Brown. The City offers additional governmental declarations and orders and references various government-agency websites, which are matters of public record entitled to judicial notice under Rule 201. *Rote v. Silicon Valley Bank, Inc.*, Case No. 3:16-cv-00471-SI, 2016 WL 4565776, at *5 (D. Or. Sept. 1, 2016) (documents available on governmental websites are public records entitled to judicial notice); *In re Marger, Johnson and McCollum, PC*, Bankruptcy Case No. 20-

30157-TMB7, 2020 WL 3494280, at *3 n.2 (Bankr. D. Or. June 25, 2020) (court took judicial notice of pandemic-related announcements by Governor Brown); *Molina v. Washington Mut. Bank,* No. 09–CV–00894–IEG (AJB), 2010 WL 431439, at *3 (S.D. Cal. Jan. 29, 2010) ("Information on government agency websites has often been treated as properly subject to judicial notice.")  But the general background information on the COVIC-19 pandemic found in news or magazine articles not referenced in the Complaint is admissible only for the purpose of proving what information was available to the public and not to prove the truth of the matters contained in such articles. *Von Saher v. Norton Simon Museum of Art at Pasedena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts make take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'").

Second, *amicus* briefs are a vehicle for offering supplement legal arguments in support of a party's position.  *Amici* should not concentrate on, or even address, the facts offered by the parties and properly before the court.  *See Funbus,* 801 F.2d at 1125 (*amici* may take legal position and offer legal arguments in support of it but may not present highly partisan, or any, account of facts).  Consequently, the supplemental account of the facts offered by the City is not a proper subject for an *amicus* brief.  This factor weighs against, not in favor of, the City's request to appear as *amicus curiae*.

III.  Drawing the Court's Attention to Law that Escaped Consideration

The pivotal issue before the court is the proper construction of the Policy terms, and it is this issue the City's *amicus* request completely fails to address.  State law determines the court's interpretation of insurance policies and an insurer's duty to defend and indemnify.  *Larson Constr. Co. v. Or. Auto. Ins. Co.,* 450 F.2d 1193, 1195 (9th Cir.1971); *Country Mut. Ins. Co. v. Larson,*

Civil No. 08–6154–TC, 2010 WL 1039790, at *1 (D. Or. Feb. 26, 2010) (adopted by *Country Mut. Ins. Co. v. Larson,* Civil No. 08–6154–TC, 2010 WL 1039798 (D. Or. Mar. 19, 2010)). Under Oregon law, "[t]he primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties." *Totten v. New York Life Ins. Co.,* 298 Or. 765, 770 (1985). Such intentions are to be ascertained from the terms and conditions of the policy. *Leander Land & Livestock, Inc. v Am. Econ. Ins. Co.*, No. 6:11–cv–06426–AA, 2013 WL 1786348, at *2 (D. Or. Apr. 21, 2013). This analysis begins by looking at the definitions contained in the insurance policy. *W. Am. Ins. Co. v. Hernandez,* 669 F. Supp. 2d 1211, 1221 (D. Or. 2009).

The City seeks to offer background facts describing the COVID-19 virus, the City's justifications for issuing preventative measures, and the effect a ruling in favor of Cincinnati would have on the City's residents and budget and other insureds filing similar claims. None of these background facts are relevant to the legal question before the court: whether the Policy provides coverage and Insured's allegations state a viable claim against Cincinnati. The City's *amicus* brief offers no legal argument and cites to no legal precedent; instead, it advances only extrinsic considerations and policy arguments that are not relevant to the legal standard which governs this court's determination whether insurance coverage does or does not exist.

The City fails to draw the court's attention to law not offered or addressed by the parties. Consequently, the third factor weighs against the City's motion for leave to appear as *amicus curiae*.

IV.  Summary

The *amicus* brief offered by the City does not satisfy the "classic role" of an *amicus curiae*. The City does not necessarily assist the court in a case of public interest, and the offered *amicus*

brief essentially duplicates rather than supplements the efforts of counsel, offers facts not properly before the court, and fails to draw the court's attention to law that escaped consideration. Consequently, the City has not established it is entitled to appear as *amicus curiae*.

## Conclusion

The City's motion (ECF No.48) for leave to appear as *amicus curiae* is DENIED.

DATED this 15th day of November, 2021.

_____
JOHN V. ACOSTA
United States Magistrate Judge